UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY  FILED
DOC #: _____
DATE FILED:  10/26/16
```

-------------------------------------------x
                  :

MOHAMMAD SHABAZ KHAWAR,    :

           Petitioner,   :       15-cv-05784

                  :       10-cr-01082

        v.            :

                  :      **OPINION**

UNITED STATES OF AMERICA,    :

           Respondent.   :

                  :

-------------------------------------------x

     Petitioner Mohammad Shabaz Khawar moves, *pro se*, to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. Khawar claims he was deprived of his right to effective assistance of counsel. For the reasons stated below, Khawar's motion is denied.

## BACKGROUND

     On November 15, 2012, a four-count indictment was filed against Khawar, charging him with (1) conspiracy to commit bank and wire fraud, (2) conspiracy to commit international money laundering, (3) aggravated identity theft, and (4) conspiracy to commit access device fraud. The indictment alleged that Khawar was a member of an international criminal organization that manipulated credit/debit card readers at retail stores to steal sensitive financial information from consumers. Members of the organization exploited the stolen data to create counterfeit ATM cards, which were then used to fraudulently withdraw cash from victims' bank accounts.

1

Khawar's role in the conspiracy involved setting up the manipulated card readers—also known as "skimmers"— at stores. Specifically, the Government alleged that Khawar, who is from London, recruited teams of co-conspirators on at least two occasions and led them on trips from the United Kingdom to the Netherlands to install skimmers. After evading law enforcement for some time, Khawar and other co-conspirators were eventually arrested by Dutch authorities. When arrested, the group was found with skimmers and a laptop computer containing stolen bank account information. During questioning, Khawar admitted his own guilt but denied his supervisory role in the organization in an effort to minimize the extent of his involvement in the conspiracy.

Khawar pled guilty under a plea agreement on February 26, 2014 to count four of the indictment, which charged him with conspiracy to commit access device fraud in violation of 18 U.S.C. § 1029(b)(2). The plea agreement provided that the United States Sentencing Guidelines would apply to Khawar's sentence. As set forth in the plea agreement, the parties agreed that the total offense level under the Guidelines was 27. This calculation was based in part on the parties' factual stipulation that Khawar's conduct created a reasonably foreseeable loss of more than $7,000,000 but not more than $20,000,000. Since Khawar was in Criminal History Category I, the recommended sentencing range under the Guidelines was 70 to 87 months' imprisonment. In the plea agreement, Khawar expressly waived his right to appeal or collaterally

2

challenge a sentence within or below the stipulated sentencing range of 70 to 87 months. This waiver included petitions under 28 U.S.C. § 2255.

At the plea hearing, the court determined that Khawar was satisfied with his counsel, that he was competent to enter an informed plea, and that he had signed the plea agreement. The court also made sure that Khawar was aware he could "be sent to prison for up to seven and a half years." (Plea Tr. at 5:10-18). Further, counsel for the Government informed the court that Khawar agreed to "a waiver of his right to appeal a sentence within or below the stipulated guidelines range," and Khawar confirmed that this information was correct. (Plea Tr. at 10:14-20). The court accepted the plea as voluntary and factually based.

The terms of the plea agreement were incorporated into the pre-sentence report ("PSR") prepared by the Probation Office. The PSR listed the Guidelines sentence as 70 to 87 months and it noted that Khawar was being held responsible for losses of more than $7,000,000 but not more than $20,000,000.

The court held a sentencing hearing on April 29, 2014. At sentencing, Khawar made no objections to the PSR, and the court adopted it. Defense counsel argued for a below-Guidelines sentence. The Government requested a sentence within the Guidelines range. After hearing from both parties, the court found the Guidelines range to be very moderate in light of the losses suffered by the victims. Therefore, the court sentenced Khawar to a prison term of 87 months, which was at the top of the stipulated range set forth in the plea

3

agreement. Defense counsel asked the court to reconsider, arguing that some of Khawar's co-defendants had received lesser sentences, but the court declined to do so.

Khawar did not directly appeal his sentence. Khawar filed this habeas petition pursuant to 28 U.S.C. § 2255, alleging that he was deprived of his Sixth Amendment right to effective counsel.

## DISCUSSION

Khawar raises a number of arguments in his petition. First, Khawar claims that the stipulated sentencing range in his plea agreement was based on an inaccurate monetary loss estimate. Thus, Khawar argues that counsel was ineffective for advising him to accept the plea agreement and for failing to object to its terms at sentencing. Second, Khawar contends that counsel was ineffective for not objecting to the Government's remarks in its sentencing memorandum and at the sentencing hearing that Khawar had a leadership role in the conspiracy. Finally, Khawar claims that counsel was ineffective for failing to object to the disparity in sentences between Khawar, his co-defendants, and similarly situated defendants nationwide. The Government argues that Khawar waived his right to collaterally attack his sentence and, even if he did not, his claims lack merit.

### I. Legal Standard for 28 U.S.C. § 2255 Motions

A federal prisoner may petition the sentencing court to vacate, set aside, or correct his sentence on the ground that the sentence was illegally imposed.

4

28 U.S.C. § 2255(a). The Second Circuit has held that relief under § 2255 is available "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995). "Because the Sixth Amendment provides criminal defendants with the right to *effective* assistance of counsel, . . . inadequate representation is a basis for relief under section 2255." *Morales v. United States*, 635 F.3d 39, 43 (2d Cir. 2011).

## II. Statute of Limitations

The Government points out in a footnote that Khawar's petition may be untimely. Khawar was sentenced on April 29, 2014, and his conviction became final on May 14, 2014 when the 14-day period to file a notice of appeal expired. *See* Fed. R. App. P. 4(b)(1)(A)(i). Khawar had one year from that date, or until May 14, 2015, to timely submit his § 2255 motion into the prison mail system for delivery to the court. *See* 28 U.S.C. § 2255(f)(1); *Moshier v. United States*, 402 F.3d 116, 118 (2d Cir. 2005) ("[F]or purposes of § 2255 motions, an unappealed federal criminal judgment becomes final when the time for filing a direct appeal expires."). Khawar's petition, however, was not docketed until July 20, 2015. Thus, it initially appears to be time-barred.

Khawar states that he originally sent his petition to the court via certified mail "on or around April 18, 2015." (ECF No. 4). Khawar has not provided the tracking number for this mailing in his submissions, but claims that it shows

5

the petition was delivered to the court on April 20, 2015. Khawar explains that he resubmitted his petition in July 2015 after he called the Clerk's Office to inquire about the status of his case and was told that there was no record of his petition allegedly filed in April 2015.

Under the prison mailbox rule, "a *pro se* prisoner's habeas petition is deemed filed at the moment he gives it to prison officials." *Hardy v. Conway*, 162 F. App'x 61, 62 (2d Cir. 2006). The Second Circuit has "never required prisoners to provide affidavits of service to verify when they give their documents to prison officials." *Id.* "Indeed, in the absence of contrary evidence, district courts in this circuit have tended to assume that prisoners' papers were given to prison officials on the date of their signing." *Id.* Here, although the court cannot discern from the record when Khawar first gave his petition to prison officials for mailing, the Government has not presented any evidence to counter Khawar's explanation for the late filing. The court cannot conclude on an ambiguous record that Khawar's petition was filed after the limitations period expired. Accordingly, the court will treat Khawar's petition as timely.

### III. Khawar Waived His Right to File This Petition

In his plea agreement, Khawar waived his right to appeal or collaterally attack any sentence within or below the stipulated Guidelines range of 70 to 87 months' imprisonment. "It is well established that a defendant may waive his right to appeal by a plea agreement and that such waivers are generally enforceable." *United States v. Marte*, 798 F. Supp. 2d 511, 515 (S.D.N.Y. 2011)

6

(citing *United States v. Gomez-Perez*, 215 F.3d 315, 318 (2d Cir. 2000)). The waiver may include both the right to a direct appeal and the right to bring a collateral attack under § 2255. *See Garcia-Santos v. United States*, 273 F.3d 506, 509 (2d Cir. 2001) ("We have long enforced waivers of direct appeal rights in plea agreements, even though the grounds for appeal arose after the plea agreement was entered into. . . . The reasons for enforcing waivers of direct appeal in such cases lead us to the same conclusion as to waivers of collateral attack under § 2255."). However, even where the plain language of a plea agreement purports to bar an appeal or a collateral attack, a defendant may still challenge "the constitutionality of the process by which he waived those rights." *United States v. Hernandez*, 242 F.3d 110, 113 (2d Cir. 2001). For example, a waiver of the right to appeal is not enforceable where the plea agreement was *entered into* involuntarily and unknowingly, or without effective assistance of counsel. *Marte*, 798 F. Supp. 2d at 515. "[W]ith respect to claims of ineffective assistance of counsel that are limited to *post-plea* events (e.g. sentencing), however, the waiver remains enforceable." *Marulanda v. United States*, No. 07-cv-5301, 2009 WL 1546315, at *2 (E.D.N.Y. June 2, 2009) (emphasis added); *see also United States v. Djelevic*, 161 F.3d 104, 107 (2d Cir. 1998) ("[Defendant] claims that his waiver should not bar consideration of his appeal because counsel was ineffective not at the time of the plea, but at sentencing. We emphatically reject this contention.").

Here, in his plea agreement, Khawar agreed not to file a direct appeal or bring a collateral challenge under 28 U.S.C. § 2255 if he received a sentence

7

within the stipulated Guidelines range of 70 to 87 months' imprisonment. The court imposed a prison sentence of 87 months. Thus, absent some exception, Khawar has waived his right to file this petition. Khawar does not allege that he entered into the plea agreement involuntarily or unknowingly, but he argues that he received ineffective counsel. Khawar claims that his counsel was ineffective for (1) encouraging him to sign the plea agreement even though the stipulated monetary loss amount was too high, (2) not objecting to the loss amount at sentencing, (3) failing to object to the Government's assertion at sentencing that he played a supervisory role in the conspiracy, and (4) failing to object to the disparity in sentences between him, his co-defendants, and similarly situated defendants nationwide. Only the first of these arguments—that is, counsel's allegedly deficient advice to accept the plea agreement and the stipulated loss amount—pertains to the process by which Khawar entered into the plea agreement. Therefore, Khawar can only avoid the waiver provision in the plea agreement if he succeeds on this specific ineffective assistance claim.

To prevail on an ineffective assistance of counsel claim, a defendant must show (1) that his attorney's performance fell below an objective standard of reasonableness, and (2) that he suffered prejudice as a result. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). Khawar's ineffective assistance claim concerning the process by which he entered into the plea agreement is grounded in the proposition that had he rejected the plea agreement, the Government would have eventually relented and offered him a deal with more

8

favorable terms. Specifically, Khawar suggests that his lawyer could have put the Government to its burden of proving the stipulated monetary loss amount in the plea agreement and then procured a plea offer with a lower stipulated sentencing range. There is no indication that the Government would have considered a plea agreement with such terms. More importantly, Khawar has not met the two-prong test for ineffective assistance set forth in *Strickland*.

First, Khawar's attorney's performance did not fall below an objective standard of reasonableness. When evaluating counsel's conduct, the court considers whether, in light of all the circumstances, counsel's "acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. "Errors in counsel's predictions of a defendant's ultimate sentence under the United States Sentencing Guidelines generally do not constitute ineffective assistance of counsel because such predictions are, by nature, only guesses or estimates." *Hsu v. United States*, 954 F. Supp. 2d 215, 221 (S.D.N.Y. 2013) (citing *United States v. Sweeney*, 878 F.2d 68, 70 (2d Cir. 1989)). Where a "defendant's specific claim is that counsel has misled him as to the possible sentence which might result from a plea of guilty, the issue is whether the defendant was aware of actual sentencing possibilities." *United States v. Arteca*, 411 F.3d 315, 320 (2d Cir. 2005). "Any allegations a defendant makes in a § 2255 petition cannot overcome his contrary statements under oath during a plea allocution, which must be given presumptive force of truth." *Hsu*, 954 F. Supp. 2d at 221.

Here, Khawar claims that he only accepted the plea agreement "after much encouragement from counsel" and assurances from counsel that he would receive a below-Guidelines sentence. (Pet. at 6). Even assuming Khawar's counsel actually made these statements, they cannot be the basis for an ineffective assistance claim because they were merely estimates. *See Sweeney*, 878 F.2d at 70 ("The law in this circuit prior to the Sentencing Guidelines was clear that a defendant was not entitled to withdraw a guilty plea simply because his attorney erroneously predicted his sentence. . . . Now that we have the Guidelines, we do not believe that [a defendant] may avoid the effect of our precedents by characterizing a mistaken prediction as ineffective assistance of counsel."). Moreover, at his plea allocution, Khawar acknowledged that the court could sentence him to prison for up to seven and a half years. (Plea Tr. at 5:10-18). Khawar also stated that he understood the sentence was ultimately up for the court to decide at a later date. (Plea Tr. at 5:25-6:7). These sworn statements demonstrate that Khawar was aware of his sentencing exposure upon pleading guilty. Indeed, Khawar has not alleged that his lawyer failed to convey the actual terms of the plea agreement to him. Accordingly, Khawar has not met the first prong of proving ineffective assistance under *Strickland*.

Second, even if Khawar's counsel's performance was unreasonable, Khawar's allegations are insufficient to satisfy *Strickland*'s "prejudice" requirement in the context of a guilty plea. To show "prejudice" in these circumstances, "the defendant must show that there is a reasonable probability

10

that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Khawar does not allege that he considered going to trial. Instead, he argues that he could have gotten a better deal. The Second Circuit, however, "has repeatedly rejected ineffective assistance claims where . . . the petitioner in retrospect finds fault with the plea negotiated by counsel." *Albanese v. United States*, 415 F. Supp. 2d 244, 250 (S.D.N.Y. 2005). Accordingly, Khawar's ineffective assistance claim with respect to entering into the plea agreement fails. Therefore, the waiver provision in the plea agreement is enforceable, and it bars the remaining claims in this habeas petition.

### IV. Even if the Remaining Claims Were Not Barred, They Lack Merit

Although the court finds Khawar's remaining claims barred by the waiver in his plea agreement, the court would dismiss the claims even if they were not barred because they have no merit. Khawar first argues that his attorney should have objected to the monetary loss amount in the plea agreement and required the Government to prove the amount. In making this argument, Khawar also suggests that the court should have independently calculated the loss amount. Second, Khawar contends that counsel was ineffective for failing to challenge the Government's description of his supervisory role in the conspiracy. Third, Khawar claims that counsel was ineffective for not objecting to the disparity between his sentence and the sentences of his co-defendants and similarly situated defendants nationwide. Each of these claims, if not barred, would fail on the merits.

11

## A. *Stipulated Monetary Loss Amount*

Khawar argues that the stipulated loss amount was improperly
calculated, causing the court to impose a longer prison term than he otherwise
would have received. Khawar first claims that his lawyer was ineffective for
failing to object at sentencing to the loss amount. Khawar also contends that
the court was "required to make individualized findings regarding the amount
in monetary loss" attributable to him. (Pet. at 10).

Khawar's lawyer was not ineffective for failing to object at sentencing to
the loss amount and the corresponding Guidelines calculation. The plea
agreement included the following provision:

> The parties agree that neither a downward nor an upward
> departure from the Stipulated Guidelines Range set forth above is
> warranted. Accordingly, neither party will seek any departure or
> adjustment pursuant to the Guidelines that is not set forth herein.
> Nor will either party suggest that the Probation Office consider
> such a departure or adjustment under the Guidelines, or suggest
> that the Court *sua sponte* consider any such departure or
> adjustment.

(Opp'n Ex. A at 3). In light of these terms, Khawar's lawyer could not have been
expected to object at sentencing to the loss amount in the plea agreement
because the plea agreement foreclosed this possibility by providing that neither
party would seek an adjustment of the stipulated Guidelines calculation.

Khawar's remaining arguments concerning the loss amount—specifically,
that the Government should have been required to prove it and that the court
should have independently calculated it—directly attack the sentence rather
than counsel's performance. Thus, they are beyond the scope of ineffective
assistance of counsel. The Second Circuit has held that a defendant may not

12

"dress up his claim as a violation of the Sixth Amendment," when "in reality [he] is challenging the correctness of his sentence under the Sentencing Guidelines" contrary to "the plain language of the waiver contained in his plea agreement." *Djelevic*, 161 F.3d at 107. Nonetheless, these arguments fail.

A stipulation in a plea agreement as to monetary loss "is essentially a promise by the government and the defendant not to contest the stipulated amount and to represent to the court their joint view that the amount is accurate." *United States v. Granik*, 386 F.3d 404, 411 (2d Cir. 2004). Although the stipulation does not bind the court, it "may be relied upon in finding facts relevant to sentencing." *Id.* at 412. If a defendant disagrees with the stipulated loss amount in a plea agreement proposed by the prosecution, the defendant may try to convince the prosecution that a lower amount is appropriate or decline to enter into the agreement. *Albanese*, 415 F. Supp. 2d at 251.

Here, the plea agreement provided that the loss was more than $7,000,000 but not more than $20,000,000. The plea agreement and the factual stipulations therein were the result of back-and-forth negotiations between Khawar and the Government. In exchange for Khawar stipulating to this loss amount on count four of the indictment, the Government agreed to drop the other charges. The time for Khawar to contest the loss amount in the plea agreement was during these negotiations. Khawar did, in fact, successfully convince the Government to reduce the loss amount to the level ultimately included in the plea agreement. The original offer extended by the Government included a higher monetary loss and exposed Khawar to a sentencing range of

13

94-111 months' imprisonment. Of course, if Khawar was ultimately dissatisfied with the plea agreement, he could have declined to sign it.

Khawar cites various authorities for the proposition that, when a defendant objects to a factual finding used in calculating his sentence under the Guidelines, the Government bears the burden of establishing the disputed fact. This rule, however, is inapplicable here because Khawar did not object to the factual finding *but rather stipulated to it in the plea agreement.* The Second Circuit has held that "binding a defendant to factual stipulations regarding a crime requires only an understanding of the obvious: facts admitted in a plea agreement can, and usually will, be accepted by the sentencing court as true." *Granik*, 386 F.3d at 413. Thus, the court was justified in accepting Khawar's factual admission as true and sentencing Khawar accordingly.

Of course, a factual stipulation in a plea agreement is only valid if it was knowing and voluntary. "This test will ordinarily be satisfied where: (i) the plea agreement makes a stipulation clearly and explicitly and (ii) the defendant signs the agreement and allocutes to understanding the consequent loss of the right to put the government to its proof." *Granik*, 386 F.3d at 413. "It will ordinarily not be necessary for the court taking the plea to question a defendant specifically about each factual stipulation." *Id.*

Here, Khawar has not alleged that the factual stipulations in the plea agreement were unknowing or involuntary. Indeed, at the plea hearing, Khawar confirmed that he had signed the plea agreement and that his attorney had thoroughly reviewed it with him. The record clearly demonstrates that Khawar

understood the admissions he was making by pleading guilty under the plea agreement. Because the factual stipulations in the plea agreement were knowing and voluntary, the court appropriately relied on them.

## B. *Khawar's Role in the Conspiracy*

Khawar contends that he was prejudiced by his lawyer's failure to challenge the Government's assertion that he had a management role in the conspiracy. This argument fails because no objection was appropriate given that the Government's statement was true. While Khawar was not the overall leader of the conspiracy, the Government presented evidence that Khawar recruited others to accompany him to the Netherlands to install skimmers. Khawar does not dispute these specific facts but rather argues that the Government mischaracterized him as a "major player" in the conspiracy. The Government's sentencing memoranda, however, specifically differentiated between the conspiracy's overall leadership and Khawar's supervisory role of smaller teams traveling to the Netherlands. And, at sentencing, although the Government stated that Khawar "had a management role" in the conspiracy, the Government clarified that the plea agreement did not call for a leadership enhancement. (Sentencing Tr. at 6:4-19). Thus, no objection was appropriate given that the Government accurately described Khawar's conduct.

Even though Khawar's counsel was not required to object, she did so after the court imposed the sentence by asking the court to reconsider. Khawar's attorney stated that Khawar "certainly was not the organizer when [the Government] referred to him in a leadership role. It was a leadership role

15

of a crew that went overseas from London[;] that went to [the] Netherlands from London." (Sentencing Tr. at 8:17-20). Not only do these statements support the Government's assertion that Khawar had some supervisory responsibilities, but they also demonstrate competent counsel.

As previously discussed, a claim for ineffective assistance of counsel requires a showing that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense. *Strickland,* 466 U.S. at 687. Although unnecessary, Khawar's lawyer brought the leadership matter to the court's attention when she asked the court to reconsider the sentence. In no way did this representation fall below an objective standard of reasonableness.

Khawar also claims that the Government's statements caused a de facto leadership role enhancement contradictory to the terms of the plea agreement. Under the Guidelines, however, a leadership role enhancement in this case would have raised Khawar's offense level by two to four levels depending on Khawar's exact management role. *See* U.S.S.G. § 3B1.1. This higher offense level would have yielded a much longer sentencing range than the 70 to 87 months' imprisonment provided for in the plea agreement. But a higher offense level was not actually sought or imposed. Accordingly, there was no de facto leadership enhancement.

### C. *Khawar's Sentence Relative to Other Sentences*

Khawar also argues that counsel was ineffective for failing to object to the disparity in sentences between him, his co-defendants in this criminal case, and similarly situated defendants throughout the country. To the extent

that Khawar's ineffective assistance claim here is once again a "backdoor attempt" to attack his sentence, it is barred by the waiver provision in his plea agreement. *See Marte*, 798 F. Supp. 2d at 515. Even on the merits, however, Khawar's sentence disparity arguments—along with his ineffective assistance claim based on counsel's alleged failure to object to the disparity—fail.

When imposing a sentence, the court considers, among other things, "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). The Second Circuit has held that this provision "requires a district court to consider nationwide sentence disparities, but does not require a district court to consider disparities between co-defendants." *United States v. Frias*, 521 F.3d 229, 236 (2d Cir. 2008). Indeed, "[a]bsent extraordinary circumstances, a defendant has no constitutional or otherwise fundamental interest in whether a sentence reflects his or her relative culpability with respect to his or her codefendants." *Bokun*, 73 F.3d at 12.

Here, Khawar first argues that his prison term of 87 months is invalid because he was equally culpable or less culpable than his co-defendants who received shorter prison terms. As the Second Circuit has explained, that argument is not legally cognizable because the court was not required to consider sentences received by Khawar's co-defendants when imposing Khawar's sentence. *See Frias*, 521 F.3d at 236; *Bokun*, 73 F.3d at 12.

Khawar also argues that the court erred by imposing a sentence disproportionate to similarly situated defendants nationwide. Khawar, however,

17

provides no support for this claim. In fact, the court actually noted at sentencing that Khawar was receiving "a very modest sentence." (Sentencing Tr. at 9:7-8). The court pointed out that "[t]here are people who have stolen less money and have served longer prison terms, there are lots of those people." (*Id.* at 9:8-10). Accordingly, the court fulfilled its statutory duty under 18 U.S.C. § 3553(a)(6) to avoid imposing an unduly harsh sentence on Khawar compared to other defendants nationwide.

Finally, Khawar's argument that counsel was ineffective for failing to object to the sentence disparity is not supported by the record. After the court imposed the sentence, defense counsel immediately asked the court to reconsider, noting that "other defendants in the group in which [Khawar] was [in] have received a sentence of 33 months, [and] another defendant received a sentence of 46 months." (Sentencing Tr. at 8:5-7). Counsel went on to say that Khawar "wasn't on par with many of the individuals who were higher up in this organization, . . . who are cooperating with the government and will receive lesser sentences." (*Id.* at 8:20-23). In his reply brief, Khawar himself notes that his attorney had, in fact, objected to the sentence and challenged the disparity. (*See* Reply at 20; 23). Thus, as the record reflects, counsel brought the issue to the court's attention.

## V. Evidentiary Hearing

Khawar's request for an evidentiary hearing is denied. A district court is required to hold a hearing in cases brought under § 2255 "[u]nless the motion and the files and records of the case conclusively show that the prisoner is

18

entitled to no relief." 28 U.S.C. § 2255(b). Thus, a hearing is not automatic. *Gonzalez v. United States*, 722 F.3d 118, 130 (2d Cir. 2013). "To warrant a hearing, the motion must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle [the defendant] to relief." *Id.* at 131. "In determining whether the assertions in a § 2255 motion warrant discovery or a hearing, the court must also take into account admissions made by the defendant at his plea hearing, for '[s]olemn declarations in open court carry a strong presumption of verity.'" *Id.* (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)). Here, the petition and records conclusively show that Khawar is not entitled to relief under 28 U.S.C. § 2255. Accordingly, no hearing is required.

## VI. Conditions of Confinement

In his reply brief, Khawar asks the court to consider the harsh conditions under which he was confined during his previous incarceration at the Metropolitan Correctional Center ("MCC") in New York. Khawar says the conditions of his confinement at the MCC would be relevant if the court were to grant him relief under § 2255 and resentence him. Because the court is not granting Khawar's petition, he will not be resentenced, and this argument is moot. Moreover, Khawar has not articulated any specific facts related to his confinement at the MCC.

## **CONCLUSION**

For the reasons set forth above, Khawar's petition pursuant to 28 U.S.C. § 2255 is denied. The court declines to issue a certificate of appealability because there has been no substantial showing of a denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2). The Clerk of Court is directed to enter judgment dismissing the petition and closing the case. This opinion also resolves Khawar's motion to hear and rule filed on April 6, 2016.

SO ORDERED.

Dated:  New York, New York
       October 26, 2016

_____
Thomas P. Griesa
United States District Judge

20